# ALBERT P. MINGIA

*v.*

# THE PEOPLE OF THE STATE OF ILLINOIS.

1. CRIMINAL LAW—*discharging a juror not named in the officer's return.* On the trial of a party indicted for murder, it appeared the sheriff had returned as a *talesman* one Burnham, whose name had been given to the prisoner in the list furnished to him, as H. C. Burnham. When Burnham was called, he was found to be a competent juror, and was accepted by the prisoner, but the State's attorney, discovering that his true name was R. C. Burnham, on his motion the court discharged him: *Held*, this action of the court was proper.

2. SAME—*who may be properly sworn as jurors.* It would be ground of error for a juror of a name different from the one furnished the prisoner to be sworn upon the panel. The persons named on the sheriff's return, and those only, unless challenged, can be sworn as jurors.

3. SAME—*challenge of jurors.* Where the court sustains a motion by the State's attorney, to discharge a juror after he has been accepted by the prisoner, such action may be referred to the right of peremptory challenge, the record showing such right not to have been exhausted.

4. EXCEPTIONS—*when necessary.* Upon the objection that the court below refused a motion to dismiss the prosecution and discharge the prisoner, who was indicted for murder, it was deemed a sufficient answer, that it did not appear the prisoner's counsel excepted to the action of the court, nor were the grounds of the motion stated.

5. EVIDENCE—*when it should be preserved.* The objection that the verdict of guilty in a criminal case is against the evidence, can not avail where the evidence is not preserved in the record.

6. NEW TRIAL—*newly discovered evidence.* The allegation of newly discovered evidence should be supported by affidavit, to be available as ground for a new trial.

7. CRIMINAL LAW—*effect of legislation subsequent to commission of an offense—construction of acts of 1867 and 1869 concerning capital punishment.* The act of 1869, concerning capital punishment, is not in conflict with the act of 1867 on the same subject, so that where a homicide was committed in the year 1867, and while the latter act was in force, the person committing the crime could properly be tried and convicted after the act of 1869 was in force.

8. SAME—*in what mode the question may be raised.* Under the act of 1867, no person could be sentenced to death by any court, unless the jury

should so find in their verdict, upon trial, and the act of 1869 provides that the court may, upon a plea of guilty, sentence the prisoner to be executed, but in a case where a party was convicted of murder and the jury prescribed the penalty to be confinement in the penitentiary for a term of years, it was *held*, the prisoner was not in a position to object that he was tried under the act of 1869 for an offense committed while the act of 1867 was in force. Had he pleaded guilty and then demanded his discharge, he would have been in a position to raise the question.

WRIT OF ERROR to the Circuit Court of Massac county; the Hon. DAVID J. BAKER, Judge, presiding.

This was an indictment against Albert P. Mingia, charging him with the murder of John T. Collier. A trial resulted in a verdict of guilty, the jury prescribing the punishment to be confinement in the penitentiary for the term of twenty years, and the prisoner was sentenced accordingly. He thereupon sued out this writ of error.

Messrs. GREEN & GILBERT, for the plaintiff in error, among other questions, in support of a motion in arrest of judgment, made this point:

The homicide was committed in October, 1867, at which date the "act in relation to capital punishment," approved March 5, 1867, was in force. That act repealed all prior laws concerning the punishment for murder. Before the prisoner's trial, which was in May, 1869, the act of March 13, 1869, "to amend an act in relation to capital punishment," had been passed, repealing (as we think) the act of 1867. If we are right in our view of the effect of the act of 1869, in repealing the act of 1867, then the judgment should have been arrested, because there was, at the time of the trial and verdict, in force no law defining the punishment of murder, which was in existence when the homicide was committed. The act of 1869 repeals all acts in conflict with it. It copies the act of 1867, and adds to it a provision which renders the entire act in conflict with the act of 1867. The latter act was not repealed by implication, but in express terms, by reason of its conflict with the new law.

In *Musick* v. *The People*, 40 Ill. 268, a construction is given to the act of 1865, increasing the punishment for larceny of horses; and in that case the court say, it was manifest the accused was tried under the old law, and that the act of 1865 does not, either expressly or by implication, repeal the old law. Exactly the reverse is the case with the accused in this case. It is not manifest that he was tried under the act of 1867; on the contrary, it can hardly, as it seems to us, be pretended that both the act of 1867 and the act of 1869 are in force.

We also submit that the act of 1869 was, in its practical operation upon the rights of the prisoner, *ex post facto*. An *ex post facto* law is one which renders " an act punishable in a manner in which it was not punishable when it was committed. 1 Kent, 450.

If the law in force at the time of the commission of a criminal act gives the alleged criminal any benefit or advantage, which benefit or advantage is diminished by a law passed subsequent to the commission of the act, then such subsequent act is *ex post facto*. We feel justified in taking this view, by the spirit, if not the letter, of the opinion in *Fletcher* v. *Peck*, 6 Cranch, 138.

Under the act of 1867, the prisoner had the right to plead guilty, coupled with the certainty of freedom from the death penalty. By the act of 1869, this right was taken away.

Mr. WASHINGTON BUSHNELL, Attorney General, for the people.

Mr. JUSTICE BREESE delivered the opinion of the Court:

This was an indictment in the circuit court of Massac county, for murder, presented by the grand jury at the November term, 1867.

A special term was held in the succeeding month of December, for the trial of the prisoner, and on being furnished with a copy of the indictment and a list of the jurors and witnesses,

he was duly arraigned, and pleaded not guilty, and on his motion and affidavit a continuance was granted to the next May term.

At that term of the court, a further continuance was granted, on motion of the prisoner, to the next November term, at which term no other proceeding appears to have been had, except ordering an attachment for a witness duly summoned on behalf of the prosecution.

At the May term, 1869, the prisoner appeared in person and by his counsel, and by agreement with the State's attorney, the cause was set for trial on the next Saturday. On that day the prisoner entered a motion to dismiss the prosecution, and for his discharge.

No reasons were assigned for the motion, nor was the motion then disposed of by the court.

A jury was empanneled, and a verdict of guilty rendered, and his punishment fixed at twenty years imprisonment in the penitentiary, on which finding a formal judgment was entered by the court.

A motion for a new trial, and in arrest of judgment, was overruled, to which no exception was taken.

To reverse this judgment, the record is brought here by writ of error, and various errors assigned, the first of which questions the ruling of the court in discharging a juror, one Burnham, on motion of the State's attorney, after the juror had been accepted by the prisoner.

It appears the sheriff had returned as a *talesman* one Burnham, whose name had been given to the prisoner, in the list furnished to him, as H. C. Burnham. When Burnham was called, he was found to be a competent juror, and was accepted by the prisoner, but the State's attorney discovering that his true name was R. C. Burnham, on his motion the court discharged him.

We fail to perceive any error in this. It would have been ground of error, had a juror of a name different from the one

furnished the prisoner, been sworn upon the panel.  The persons named on the sheriff's return, and those only, unless challenged, can be sworn as jurors.  But aside from this, the bill of exceptions in this regard shows that the peremptory challenges of the people were not exhausted, and the motion to discharge him was nothing more than a peremptory challenge.

The next error assigned, is in overruling the motion to dismiss the prosecution and discharge the prisoner.  It is a sufficient answer to this to say, that it does not appear the prisoner's counsel excepted to the manner in which the court disposed of this motion, nor are the grounds of the motion stated.

The next error assigned, is in overruling the motion for a new trial.

The reasons for a new trial were, that the verdict was contrary to law and evidence; newly discovered evidence tending to prove the innocence of the prisoner; that one of the jurors had expressed an opinion as to the guilt of the prisoner before he was sworn upon the jury, and last, because erroneous instructions were given on the part of the people, and proper instructions asked by the prisoner were refused.

As to the verdict being against the evidence, we have no means of determining, as the evidence is not preserved in the record.

The point that the verdict is against the law, is not argued by counsel, and we fail to perceive wherein the law has been violated by the jury.

There is no affidavit in support of the allegation of newly discovered evidence, and the charge that a juror had formed and expressed an opinion unfavorable to the prisoner, prior to the trial, is contradicted by the juror himself, whose affidavit is in the record.  The juror named, when examined on his *voir dire,* declared he had expressed no opinion.

The principal objection, on this branch of the case, arises on the instructions given for the prosecution.  The record does not show that any instructions were asked by the defendant.

We have examined those given for the people, and as abstract propositions of law, we have no fault to find with them. So far as they are founded on the evidence in the cause, we have no means of determining whether they were right or wrong, the evidence not being preserved.

In support of the motion in arrest of judgment, it is argued by the plaintiff in error, that, as the homicide was committed in October, 1867, there was not, at the time of the trial and verdict, any law defining the punishment of murder, which was in force at the time of the homicide. The act of 1869, so far as the punishment of homicide is concerned, differs in no respect from the act of 1867, under which the criminal act was done, nor is it in conflict with it in any particular. The purpose of the act of 1869, not differing in its main provisions from the act of 1867, is found in the proviso therein inserted, to supply what was deemed a *casus omissus* in the act of 1867. Had the prisoner pleaded guilty to the indictment, and demanded his discharge, he would be in a position to raise the question he now seeks to raise. As a jury has passed upon his case, he can not raise it. Though the crime was committed in 1867, and the trial had in 1869, before a jury, it matters not, so far as the prisoner's rights are involved, under which act the proceedings were carried on, inasmuch as both acts are, as we have said, precisely the same, and under neither was he deprived of any of his rights.

We see no error in the record, and must affirm the judgment.

*Judgment affirmed.*